TODD KIM
Assistant Attorney General
MATTHEW P. RAND (NY #4937157)
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
150 M Street NE, Room 3.128
Washington, D.C. 20002
Telephone: (202) 305-0874
Facsimile: (202) 305-0506
Matthew.rand@usdoj.gov
*Attorney for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM**

| | |
|---|---|
| PRUTEHI LITEKYAN: SAVE RITIDIAN,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF THE AIR FORCE; FRANK KENDALL, Secretary of the Air Force; UNITED STATES DEPARTMENT OF DEFENSE; and LLOYD AUSTIN, Secretary of Defense,<br><br>Defendants. | CASE NO. 1:22-cv-00001<br><br>Tydingco-Gatewood, J.<br>Kennedy, M.J.<br><br>**MOTION TO DISMISS** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 4

I. Facts ........................................ 4

II. The 2015 EIS ........................................ 6

III. RCRA Permits ........................................ 6

STANDARD OF REVIEW ........................................ 7

ARGUMENT ........................................ 8

I. Permitting Process Under RCRA Are Exempted From NEPA ........................................ 8

II. The Court Lacks Subject Matter Jurisdiction Over This Suit ........................................ 13

A. The United States Has Not Waived Its Sovereign Immunity Over This Suit ........................................ 13

B. Plaintiff Lacks Standing ........................................ 16

C. Plaintiff's Challenge To The Application Is Not Ripe ........................................ 18

III. Even If NEPA Does Apply To The Permitting Process, It Does Not Apply To The Application Because It Is Not A Major Federal Action ........................................ 19

CONCLUSION ........................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Siegelman v. U.S. EPA*, 911 F.2d 499 (11th Cir. 1990) .......... 1, 2, 10, 11, 13

*Anchorage v. United States*, 980 F.2d 1320 (9th Cir. 1992) .......... 1, 9, 11

*Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770 (9th Cir. 2000) .......... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 8

*Bennett v. Spear*, 520 U.S. 154 (1997) .......... 3, 14

*C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383 (1994) .......... 1

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .......... 8

*California v. Texas*, 141 S. Ct. 2104 (2021) .......... 3, 17

*Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066 (E.D. Cal. 2009) .......... 3, 4, 14, 15, 19

*Chem. Weapons Working Grp., Inc. v. U.S. Dep't of the Army*, 111 F.3d 1485 (10th Cir. 1997) .......... 11

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948) .......... 18

*City of Chicago v. Env't Def. Fund*, 511 U.S. 328 (1994) .......... 6, 19

*City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001) .......... 15

*Coast Rivers All. v. U.S. Dep't of the Interior*, 313 F. Supp. 3d 1199 (E.D. Cal. 2018) .......... 21

*Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988) .......... 4, 20

*Ctr. for Food Safety v. Perdue*, 320 F. Supp. 3d 1101 (N.D. Cal. 2018) .......... 15

*Dietary Supplemental Coal., Inc. v. Sullivan*,
978 F.2d 560 (9th Cir. 1992) ........................................................................................ 3

*Douglas Cnty. v. Babbitt*,
48 F.3d 1495 (9th Cir. 1995) ........................................................................................ 8

*DSE Grp., LLC v. Richardson*,
381 F. App'x 749 (9th Cir. 2010) ................................................................................ 17

*Env't Def. Fund v. EPA*,
489 F.2d 1247 (D.C. Cir. 1973) .................................................................................. 2, 9

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
543 F.3d 586 (9th Cir. 2008) ................................................................................ 14, 15

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) .................................................................................................... 18

*Friends of Se.'s Future v. Morrison*,
153 F.3d 1059 (9th Cir. 1998) .............................................................................. 20, 21

*Greenpeace, Inc. v. Waste Techs. Indus.*,
9 F.3d 1174 (6th Cir. 1993) ........................................................................................ 12

*Greenpeace, Inc. v. Waste Techs. Indus.*,
No. 93-cv-0083, 1993 WL 134861 (N.D. Ohio Mar. 5, 1993) ............................... 2, 10

*Hecla Mining Co. v. U.S. EPA*,
12 F.3d 164 (9th Cir. 1993) ........................................................................................ 15

*Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*,
408 F.3d 638 (9th Cir. 2005) ...................................................................................... 15

*Kenner v. Kelly*,
No. 11-cv-1538 (DMS) (WVG), 2018 WL 1726440 (S.D Cal. Apr. 10, 2018) ......................... 8

*Kingman Reef Atoll Invs., L.L.C. v. U.S. Dep't of Interior*,
195 F. Supp. 2d 1178 (D. Haw. 2002) .......................................................................... 7

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*,
No. 5-cv-3094 (CO), 2007 WL 845915 (D. Or. Mar. 16, 2007) ................................... 18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................ 16, 17

*Marquette Cnty. Rd. Comm'n v. U.S. EPA*,
726 F. App'x 461 (6th Cir. 2018) ................................................................................ 14

*Maryland v. Train*,
415 F. Supp. 116 (D. Md. 1976) ................................................................................... 9

*Meghrig v. KFC W., Inc.*,
516 U.S. 479 (1996) ...................................................................................................... 6

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012) .................................................................................... 16

*Nw. Env't Def. Ctr. v. Rumsfeld*,
No. 1-cv-1489 (HO), 2002 WL 1906883 (D. Or. June 21, 2002) .......................................... 21

*Ohio Forestry Ass'n v. Sierra Club*,
523 U.S. 726 (1998).................................................................................................. 18, 19

*Portland Cement Ass'n v. Ruckelshaus*,
486 F.2d 375 (D.C. Circ. 1973) .................................................................................... 8

*Rattlesnake Coal. v. U.S. EPA*,
509 F.3d 1095 (9th Cir. 2007) ................................................................................ 3, 13

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .................................................................................. 7, 8

*Sierra Club v. Fed. Energy Regul. Comm'n*,
754 F.2d 1506 (9th Cir. 1985) .................................................................................... 12

*Sierra Club v. Penfold*,
857 F.2d 1307 (9th Cir. 1988) ................................................................................ 2, 13

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)...................................................................................................... 16

*Temple v. Abercrombie*,
903 F. Supp. 2d 1024 (D. Haw. 2012)........................................................................... 8

*Trout Unlimited v. Lohn*,
No. 5-cv-1128 (JCC), 2007 WL 1730090 (W.D. Wash. June 13, 2007)................................... 9

*U.S. Dep't of Energy v. Ohio*,
503 U.S. 607 (1992)........................................................................................................ 1

*W. Radio Servs. Co. v. Glickman*,
123 F.3d 1189 (9th Cir. 1997) .................................................................................... 14

*Warren Cnty. v. North Carolina*,
528 F. Supp. 276 (E.D.N.C. 1981) ................................................................................ 9

*Wash. Env't Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) .............................................................................. 17, 18

*Weyerhaeuser Co. v. Costle*,
590 F.2d 1011 (D.C. Cir. 1978)..................................................................................... 8

*Wildwest Inst. v. Bull*,
468 F. Supp. 2d 1234 (D. Mont. 2006).......................................................................... 21

*Wyoming v. Hathaway*,
525 F.2d 66 (10th Cir. 1975) ....................................................................................... 8

**Statutes**

10 G.C.A. § 45102 ........ 11
42 U.S.C. § 4332(2)(C) ........ 19
42 U.S.C. § 6902(b) ........ 6
42 U.S.C. § 6925(a) ........ 7, 12, 14
42 U.S.C. § 6925(b) ........ 1
42 U.S.C. § 6925(c) ........ 19, 21
42 U.S.C. § 6925(c)(1) ........ 1
42 U.S.C. § 6926(b) ........ 7, 11
42 U.S.C. § 6926(d) ........ 11

**Regulations**

40 C.F.R. § 1508.1(q) ........ 19
40 C.F.R. § 270.1(c) ........ 14
40 C.F.R. § 270.30(h) ........ 12
40 C.F.R. §§ 124.5 ........ 19, 21

**Other Authorities**

51 Fed. Reg. 1370 ........ 7
54 Fed. Reg. 21953 ........ 7
76 Fed. Reg. 55653 ........ 6
80 Fed. Reg. 46252 ........ 6, 13

**TABLE OF ABBREVIATIONS**

| Abbreviation | Meaning |
| --- | --- |
| 2015 EIS | May 2015 Mariana Islands Training & Testing Activities Final Environmental Impact Statement/Overseas Environmental Impact Statement |
| AAFB | Andersen Air Force Base |
| APA | Administrative Procedure Act |
| Application | May 17, 2021 Application |
| BLM | Bureau of Land Management |
| EIS | Environmental impact statement |
| EOD Range | Explosive ordinance disposal range |
| EPA | Environmental Protection Agency |
| FIFRA | Federal Insecticide, Fungicide, & Rodenticide Act |
| Guam EPA | Guam Environmental Protection Agency |
| OB/OD Facility | Open Burn/Open Detonation Facility |
| RCRA | Resource Conservation and Recovery Act |

## INTRODUCTION

Congress enacted the Resource Conservation and Recovery Act ("RCRA") in 1976. "[A] sweeping statute intended to regulate solid waste from cradle to grave," *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 408 (1994) (O'Connor, J., concurring), RCRA empowers the Environmental Protection Agency ("EPA") or states or territories with authorized programs to issue permits for hazardous waste disposal. *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 611 (1992). In deciding whether to issue such a permit, EPA, or the authorized state administrator, analyzes the permit application using an intricate set of requirements. *See generally* 42 U.S.C. § 6925(b); 40 C.F.R. Subpart C. Only after assuring itself that the applicant has satisfied the requirements, which were carefully designed by Congress, *see Alabama ex rel. Siegelman v. U.S. EPA*, 911 F.2d 499, 505 (11th Cir. 1990), can EPA grant a permit. 42 U.S.C. § 6925(c)(1).

Plaintiff Prutehi Litekyan: Save Ritidian wrongly seeks to insert itself into the RCRA process by filing this lawsuit. As required by law, submitted an application on May 17, 2021 ("Application") for the renewal of the RCRA permit for the open burn/open detonation facility ("OB/OD Facility"), which is located at an explosive ordinance disposal range ("EOD Range") on Andersen Air Force Base ("AAFB"). That Application remains pending. Under RCRA, the Guam Environmental Protection Agency ("Guam EPA") will study the environmental consequences of the OB/OD Facility. Plaintiff contends that, in addition to seeking a RCRA permit, and before Guam EPA even acts on that permit, Defendants must also conduct a separate and parallel analysis on the Facility under the National Environmental Policy Act ("NEPA") to study its environmental impacts. Plaintiff is wrong. Where a federal environmental statute provides procedures sufficiently analogous to those required under NEPA, that statute is considered "functionally equivalent" to NEPA and no separate NEPA study is required. *See Anchorage v. United States*,

980 F.2d 1320, 1329 (9th Cir. 1992); *Env't Def. Fund v. EPA*, 489 F.2d 1247, 1256-57 (D.C. Cir. 1973) (holding that NEPA is not required where the agency's actions "are undertaken pursuant to sufficient safeguards so that the purpose and policies behind NEPA will necessarily be fulfilled"). Every court to have considered the issue has held that RCRA is functionally equivalent to NEPA and that a parallel NEPA study regarding the subject of the RCRA permit application is not required. *See Siegelman*, 911 F.2d at 505; *Allegany Env't Action v. Westinghouse Elec. Corp.*, No. 96-2178, 1998 U.S. Dist. LEXIS 1892, at *1-3, *19 (W.D. Pa. Jan. 20, 1998); *Greenpeace, Inc. v. Waste Techs. Indus.*, No. 93-cv-0083, 1993 WL 134861, at *10 (N.D. Ohio Mar. 5, 1993).

Moreover, Defendants have already complied with NEPA. In a 2015 environmental impact statement, Defendants studied the environmental consequences of explosive ordinance disposal, approving a plan which contemplated thirty six events per year at the EOD Range, where the RCRA-permitted OB/OD Facility is located. Plaintiff does not challenge this environmental impact statement; nor could it as the statute of limitations has expired. *See Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988).

In short, RCRA applies and supplants NEPA with respect to the Application, and Defendants are not required to conduct a new, parallel NEPA study every three years when they seek a permit renewal for a facility they have already cleared through the NEPA process. For these reasons, Plaintiff fails to state a valid NEPA claim and the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Alternatively, Plaintiff's claim suffers from several other defects that require dismissal under both Rules 12(b)(1) and 12(b)(6). The Complaint should be dismissed under Rule 12(b)(1) because the Application is not a final agency action and, as a result, the Court lacks subject matter jurisdiction. The Application is not a final action because no "legal consequences will flow" from

it. *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation omitted). The Application does not allow Defendants to operate the OB/OD Facility; only the RCRA permit, which has not issued and which Plaintiff has not challenged, would authorize the allegedly harmful activity Plaintiff seeks to redress. It is also not a final agency action because it is "a preliminary step in the [RCRA] permitting process." *Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066, 1093 (E.D. Cal. 2009) (citation omitted). Without a final agency action, the United States has not waved sovereign immunity and there is no jurisdiction over this action. *See Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1103 (9th Cir. 2007).

Dismissal pursuant to Rule 12(b)(1) is also appropriate because Plaintiff lacks standing. All of the harms Plaintiff alleges—such as potential damage to the beach on which the OB/OD Facility is located, *see* Compl. ¶ 15—are caused not by the Application, the only action Plaintiff challenges. Instead, if the alleged harms occur at all, they will be caused by an action Plaintiff does not challenge: the permit Guam EPA may grant. When standing is dependent upon the contingent future actions of a third party like Guam EPA that is not before the court, the plaintiff can demonstrate causation and redressability only by alleging facts "show[ing] 'that third parties will likely react in predictable ways.'" *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1018 (9th Cir. 2021) (quoting *California v. Texas*, 141 S. Ct. 2104, 2117 (2021)). Because the Complaint is devoid of such allegations, Plaintiff lacks standing and the Complaint must be dismissed.

Separately, because the Application is not a final agency action, Plaintiff's suit is not ripe. Challenges to agency action ordinarily become ripe only when that action is final. *See Dietary Supplemental Coal., Inc. v. Sullivan*, 978 F.2d 560, 562 (9th Cir. 1992). Because Guam EPA's consideration of the Application remains pending, the Court cannot fully evaluate Defendants'

proposed use of the OB/OD Facility, and it would be required to rule in advance of potential further factual developments that may affect the its consideration of Plaintiff's claims. *See Cent. Delta Water Agency*, 653 F. Supp. 2d at 1084-86, 1087-89.

Finally, the Complaint should be dismissed under Rule 12(b)(6) because even if NEPA does apply to RCRA permits generally, it does not apply to the Application specifically. The Application is not a "major federal action" because it is not a "final" agency action as that term is used in the Administrative Procedure Act ("APA"), *see* 40 C.F.R. § 1508.1(q)(1)(iii), and the submission of the Application itself does not "constitute an irretrievable commitment of resources." *Conner v. Burford*, 848 F.2d 1441, 1448 (9th Cir. 1988).

## BACKGROUND

### I. Facts

AAFB, "one of the largest U.S. Air Force airfields, is located in the northern portion of the island of Guam." May 2015 Mariana Islands Training & Testing Activities Final Environmental Impact Statement/Overseas Environmental Impact Statement ("2015 EIS") at 2-6.[1] It is part of the Joint Region Marianas, which, in turn, is part of the Mariana Islands Range Complex. *Id*. at 2-5-2-6. The Complex "includes land training areas, ocean surface and subsurface areas, and special use airspace . . . extend[ing] from the waters south of Guam to north of Pagan [ ], and from the Pacific Ocean east of the Mariana Islands to the Philippine Sea to the west." *Id*. at 2-5. The Navy provides administrative support for AAFB, including "ensur[ing] compliance with all environmental laws and regulations." *Id*. at 2-6.[2]

---

[1] All three volumes of the 2015 EIS are available at https://mitt-eis.com/Documents/2015-Mariana-Islands-Training-and-Testing-EIS-OEIS-Documents/Final-EIS-OEIS. Citations to "2015 EIS" are to the documents available at this hyperlink.

[2] *See also* Base Fact Sheet Andersen Air Force Base (AAFB), Guam, *available at* https://www.andersen.af.mil/Portals/43/Documents/Base%20Fact%20Sheet%202021-Andersen%20AFB-20210805.pdf?ver=GU5mj9wrNr0fj_wiBBxOWQ%3d%3d.

At AAFB, the Air Force operates the EOD Range, which includes the OB/OD Facility, a hazardous waste munitions disposal facility. Compl. ¶ 1. Located on Tarague Beach, the Range has a 2,400 foot-radius "safety zone" around it. *Id.* ¶¶ 40, 44. On May 17, 2021, AAFB submitted the Application[3] to Guam EPA, seeking a three-year renewal of its RCRA permit to operate the OB/OD Facility. *Id.* ¶ 2. The Application acknowledges that one of Guam EPA's "permit conditions" is that "[a]ny treatment of hazardous waste not authorized [by the] Permit is prohibited." Application Permit Conditions ¶ I.A.

In the Application, AAFB seeks permission to dispose of hazardous waste munitions in two ways: (1) by open detonation; and (2) by open burn. *See* Compl. ¶¶ 41, 42. However, open burn has not occurred at the OB/OD Facility for "nearly two decades." *Id.* ¶ 42.

Plaintiff, "a non-profit corporation based in Guam" dedicated to "protect[ing] natural and cultural resources in all sites identified for military live-fire training" on the island filed the Complaint on January 25, 2022. *Id.* ¶ 9. Plaintiff alleges that AAFB's operation of the OB/OD Facility has "the potential for impacts to the human environment." *Id.* ¶ 46. It also alleges that Defendants failed to comply with the APA, NEPA, and the relevant regulations when it submitted the Application to Guam EPA without preparing a NEPA analysis. *Id.* ¶¶ 58-63. Specifically, Plaintiff claims that Defendants violated these laws and regulations when they "failed to prepare an" environmental analysis or environmental impact statement ("EIS") in connection with the Application "that (1) takes the requisite 'hard look' at the environmental impacts of the proposed [open burn/open detonation] operations, (2) considers a reasonable range of alternatives, including

[3] A copy of the Draft Permit, which includes the Application, is available at http://epa.guam.gov/wp-content/uploads/2021/08/DRAFT-AAFB-EOD-OBOD-Permit.pdf. Citations to the "Application" are to the document available at this hyperlink.

the 'no action' alternative, and (3) provides opportunities for public comment on the proposed operations and reasonable alternatives." *Id.* ¶ 61.

## II. The 2015 EIS

On September 8, 2011, the Navy published a Notice of Intent to Prepare an Environmental Impact Statement/Overseas Environmental Impact Statement for Military Readiness Activities in the Marianas Islands Training and Testing Study Area and To Announce Public Scoping Meetings. 76 Fed. Reg. 55653. The Mariana Islands Training and Testing study area includes AAFB. 2015 EIS at 2-6. The 2015 EIS considered a no action alternative and two action alternatives. *Id.* at ES-8-10. Action alternatives one and two both considered 236 EODs per year, 200 events for the Navy at its emergency disposal site and 36 for the Air Force at the EOD Range. *Id.* at 2-86; *see also id.* at 3.10-5 (map showing the EOD Range). The Record of Decision, which was published on August 4, 2015, selected alternative one. 80 Fed. Reg. 46252.

## III. RCRA Permits

Enacted in 1976, "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). Its "primary purpose . . . is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (quoting 42 U.S.C. § 6902(b)). The statute "empowers EPA to regulate hazardous wastes from cradle to grave, in accordance with the [statute's] rigorous safeguards and waste management procedures." *City of Chicago v. Env't Def. Fund*, 511 U.S. 328, 331 (1994).

Subtitle C of RCRA applies to hazardous wastes. It "requir[es] each person owning or operating an existing facility or planning to construct a new facility for the treatment, storage, or disposal of hazardous waste identified or listed under this subchapter to have a permit issued

pursuant to this section." 42 U.S.C. § 6925(a). The definition of "person" includes "each department, agency, and instrumentality of the United States." *Id*. § 6992e(b). Without a permit, "the treatment, storage, or disposal of any such hazardous waste . . . is prohibited." *Id*. § 6925(a). In order to obtain a permit, "persons" must submit an application containing certain information, including (1) the "estimates with respect to the composition, quantities, and concentrations of any hazardous waste . . . proposed to be disposed of . . . and the time, frequency, or rate of which such waste is proposed to be disposed of," and (2) "the site at which such hazardous waste . . . will be disposed of." *Id*. § 6925(b). If the application "compli[es] . . . with the requirements of [section 6925] and section 6924 . . . , the [EPA] Administrator (or the State) shall issue a permit." *Id*. § 6925(c)(1).

Congress instructed EPA to "authoriz[e]" states to "administer and enforce" their own "hazardous waste program[s] pursuant to" RCRA. 42 U.S.C. § 6926(b). Once authorized, the state can "issue and enforce permits for the storage, treatment, or disposal of hazardous waste" with the same authority as if the permits were issued by the EPA. *Id*. § 6926(b), (d). The EPA authorized Guam EPA's hazardous waste program on January 13, 1986. 51 Fed. Reg. 1370; *see also* 54 Fed. Reg. 21953 (EPA's approval of Guam EPA's revisions to its RCRA program). With very limited exceptions not relevant here, Guam EPA has incorporated the EPA's permitting regulations into its own regulations. *See* 22 Guam R. & Regs. 6-§ 30109(a).

**STANDARD OF REVIEW**

Rule 12(b)(1) governs challenges to subject matter jurisdiction, including standing and ripeness. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000); *Kingman Reef Atoll Invs., L.L.C. v. U.S. Dep't of Interior*, 195 F. Supp. 2d 1178, 1182-83 (D. Haw. 2002). Jurisdictional challenges can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d

1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id*. For these attacks, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Temple v. Abercrombie*, 903 F. Supp. 2d 1024, 1030 (D. Haw. 2012) (quotation and citation omitted).

"A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint." *Kenner v. Kelly*, No. 11-cv-1538 (DMS) (WVG), 2018 WL 1726440, at *3 (S.D Cal. Apr. 10, 2018). "In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Id*. (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338-39 (9th Cir. 1996)). If the "complaint fails to contain 'enough facts to state a claim to relief that is plausible on its face,'" the "motion to dismiss should be granted." *Kenner*, 2018 WL 1726440, at *3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I. Permitting Processes Under RCRA Are Exempted From NEPA

It is well established that when an agency acts pursuant to certain complex, environmental statutes, compliance with NEPA is not required. *See Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1051 n.66 (D.C. Cir. 1978); *see also*, *e.g.*, *Douglas Cnty. v. Babbitt*, 48 F.3d 1495, 1507-08 (9th Cir. 1995) (NEPA does not apply when the Secretary of the Interior designates certain federal land as critical habitat pursuant to the Endangered Species Act); *Wyoming v. Hathaway*, 525 F.2d 66, 71-73 (10th Cir. 1975) (NEPA does not apply when the EPA acts pursuant to the registration cancellation provisions of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")); *Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 386-87 (D.C. Circ. 1973) (NEPA does not

apply to the EPA's promulgation of stationary source standards under the Clean Air Act); *Env't Def. Fund*, 489 F.2d at 1255-57 (NEPA does not apply when the EPA acts pursuant to the registration cancellation provisions of FIFRA); *Warren Cnty. v. North Carolina*, 528 F. Supp. 276, 286-87 (E.D.N.C. 1981) (NEPA does not apply when the EPA acts pursuant to the Toxic Substances Control Act); *Maryland v. Train*, 415 F. Supp. 116, 121 (D. Md. 1976) (NEPA does not apply when the EPA acts pursuant to the Ocean Dumping Act). This is particularly true "where an agency is engaged primarily in an examination of environmental questions." *Env't Def. Fund*, 489 F.2d at 1257. This "narrow exemption" from NEPA exists because when acting pursuant to the other environmental statute, the agency's actions "are undertaken pursuant to sufficient safeguards so that the purpose and policies behind NEPA will necessarily be fulfilled." *Id*.

One category of cases in which courts have found that compliance with NEPA is not required is when the procedures set forth in the other environmental statute are "the 'functional equivalent' of the NEPA procedures." *Trout Unlimited v. Lohn*, No. 5-cv-1128 (JCC), 2007 WL 1730090, at *14 (W.D. Wash. June 13, 2007). Functional equivalence involves "a comparison between the procedures provided for in the statue in question and those in NEPA." *Id*. If those procedures "are sufficiently analogous," the procedures "will be held to be functional equivalents." *Id*. In *Anchorage*, the Ninth Circuit held that the Clean Water Act's procedures are the "functional equivalent" to NEPA's procedures. *Anchorage*, 980 F.2d at 1329. The Ninth Circuit stressed that in passing the Clean Water Act, "Congress has policed the police and protected the environment" by "ensur[ing] that the [EPA] will consider the environmental impact of its actions" and that "many" of those considerations are "the same things that NEPA would require." *Id*.

Every court that has considered the issue has held that RCRA satisfies the functional equivalency standard because RCRA is a "comprehensive" environmental statute that sets forth

the "substantive and procedural standards [that] are intended to ensure that EPA considers fully, with the assistance of meaningful public comment, environmental issues involved in the permitting" process. *Siegelman*, 911 F.2d at 505. In holding that compliance with NEPA is not needed when issuing a RCRA permit, the Eleventh Circuit rejected the petitioners' argument that an EIS was necessary because "RCRA does not require EPA to consider every point the agency would have to consider in preparing a formal EIS under NEPA." *Id*. at 504-05. As the Eleventh Circuit explained, requiring NEPA on top of RCRA's permitting procedures would undermine RCRA's attempt to "strike a workable balance between some of the advantages and disadvantages of full application of NEPA." *Id*. at 505 (quotation and citation omitted).

In *Greenpeace, Inc.*, the Northern District of Ohio similarly held that because "RCRA is, by regulation, the 'functional equivalent' of NEPA," EPA did not have to prepare a NEPA analysis when it issued a RCRA permit for a hazardous waste incinerator. *Greenpeace, Inc.*, 1993 WL 134861 at *1, *10. Like the Eleventh Circuit, the Northern District of Ohio took note of the comprehensive nature of RCRA, analogizing it to the Clean Water Act, *see id*. at *10 n.4, the statute the Ninth Circuit found to be functionally equivalent to NEPA in *Anchorage*.[4]

The fact that the permitting agency here is not EPA but Guam EPA does not alter the conclusion that Defendants did not need to comply with NEPA when they submitted the Application. Like EPA, Guam EPA's purpose is to ensure that Guam has "a high quality environment [ ] at all times . . . and that environmental degradation of the quality of land, water

---

[4] The cases finding that RCRA is the functional equivalent of NEPA note that RCRA, like NEPA, allows for "meaningful public comment." *Siegelman*, 911 F.2d at 505. Guam EPA had a forty-five-day public comment period, including at least one public hearing, on the Application, starting on July 30, 2021. *See* Guam Environmental Protection Agency Andersen Air Force Base, Guam, Draft Hazardous Waste Management Facility Permit, Notice of 45-Day Public Comment Period & Public Hearing, http://epa.guam.gov/wp-content/uploads/2021/08/ODOD-NEWPAPER-PRINT.pdf.

and air by any pollutants . . . [is] not [ ] allowed. 10 G.C.A. § 45102; *see also Siegelman*, 911 F.2d at 504 n.11 (explaining that there is "little need in requiring a NEPA statement from an agency whose raison d'être is the protection of the environment and whose decision is necessarily infused with the environmental consideration so pertinent to Congress" (quotation, citation, and alteration omitted)). To be an authorized permit administrator under RCRA, Guam EPA had to demonstrate that its permitting program (1) is "equivalent to the Federal [RCRA] program," (2) is "consistent with the Federal or State programs applicable in other States," and (3) "provide[s] adequate enforcement of compliance with the requirements of" RCRA. 42 U.S.C. § 6926(b). If Guam EPA did not meet all three of these requirements, EPA could not authorize its permitting program. *See id.*; *see also* 51 Fed. Reg. at 1371 ("conclud[ing] that [Guam's] application for Final Authorization meets all of the statutory and regulatory requirements established by RCRA"). In other words, Guam EPA could not have an authorized permitting process if it did not prove to EPA's satisfaction that it would "consider[ ]" just as "fully" as EPA, "with the assistance of meaningful public comment, [the] environmental issues involved in the permitting" process set forth by Congress. *Siegelman*, 911 F.2d at 505. Because it is authorized to issue hazardous waste permits, "[a]ny action taken by" Guam EPA "under [its] hazardous waste program" has "the same force and effect as action by the" EPA. 42 U.S.C. § 6926(d).

Reaching the opposite conclusion—that Guam EPA is exempt from the functional equivalency doctrine—runs counter to one of the purposes of the doctrine, deferring to the environmental stewardship decisions of Congress. *See Anchorage*, 980 F.2d at 1329. When it passed RCRA, Congress decided that the states and territories, when duly authorized by EPA, are capable of evaluating the environmental consequences of a hazardous waste permit. This Court should defer to Congress's decision. *See Chem. Weapons Working Grp., Inc. v. U.S. Dep't of the*

*Army*, 111 F.3d 1485, 1492 (10th Cir. 1997) (treating "state agencies with federally-delegated authority" as equivalent to EPA's permitting decisions).

Nor does the fact that the permit application was submitted by AAFB, another federal entity, alter this conclusion. Requiring multiple agencies to conduct an environmental review of the same action is inefficient. Because Guam EPA is the agency with the authority to "change the status quo" by issuing a RCRA permit for the OB/OD Facility, it is also responsible for conducting the appropriate environmental analysis. *Sierra Club v. Fed. Energy Regul. Comm'n*, 754 F.2d 1506, 1509 (9th Cir. 1985) (holding that FERC was not responsible for conducting a NEPA analysis, even though it issued a "preliminary permit" because it did "not change the status quo" by "allow[ing] the applicant to construct any facilities or conduct any tests without further permission from other federal agencies"). Defendants cannot on their own alter the status quo because without the permit, they cannot operate the Facility. *See* 42 U.S.C. § 6925(a).

Further, the Application is a preliminary step in the Congressionally created "complex response" to the problem of "safely disposing of hazardous waste." *Greenpeace, Inc. v. Waste Techs. Indus.*, 9 F.3d 1174, 1179 (6th Cir. 1993) (describing "the EPA's graphic on the RCRA permitting process [as] look[ing] something like the organizational chart of the Prussian army, with no less than twenty-six notable loci of decision" (quotation, citation, and alteration omitted)). The information Guam EPA needs to make a decision on the Application is set forth in RCRA and the applicable regulations. Should Guam EPA require additional information, it has the authority to request such information from Defendants. 40 C.F.R. § 270.30(h). Adding additional information beyond this threatens to make the permitting process unduly burdensome and time consuming. Thus, requiring Defendants to conduct a NEPA analysis on this preliminary step undermines the "workable balance" Congress designed when it enacted RCRA just as it would to

require NEPA on the permit itself. *Siegelman*, 911 F.2d at 505 (citation omitted). Plaintiff essentially asks this Court to assume that not only does Guam EPA need more information to make this decision but that it will not request this information from Defendants. There is no basis for such an assumption. *See Allegany Env't Action*, 1998 U.S. Dist. LEXIS 1892, at *1-3, *19 (holding that a NEPA analysis was not required when the EPA issued a RCRA permit for a federally owned atomic power laboratory).

While Defendants need not perform a NEPA analysis on the Application, they did perform one on the operation of the EOD Range. In the 2015 EIS, Defendants studied a range of activities at the Mariana Islands Training and Testing study area, including the Air Force's continued use of the EOD Range, which includes the OB/OD Facility. *See* 2015 EIS at 2-86. Because the Facility is subject to RCRA, this continued use contemplates its periodic re-permitting. Therefore, no further NEPA analysis is required. Nor could Plaintiff challenge this analysis as more than six years has passed since the August 4, 2015 Record of Decision. 80 Fed. Reg. 46252; *see Penfold*, 857 F.2d at 1315 (applying six-year statute of limitations for APA challenges to NEPA analyses).

## II. The Court Lacks Subject Matter Jurisdiction Over This Suit

There is no subject matter jurisdiction here because (1) the United States has not waived its sovereign immunity under the APA, (2) Plaintiff lacks standing, and (3) the claim is not ripe.

### A. The United States Has Not Waived Its Sovereign Immunity Over This Suit

"[B]ecause NEPA does not subject [Defendants] to suit, [Plaintiff] has to establish waiver of immunity under the" APA. *Rattlesnake Coal.*, 509 F.3d at 1103 (citations omitted). Under the APA, the United States waives sovereign immunity only for those claims that challenge final agency actions. Thus, if the challenged agency action is not final, the United States remains immune from suit, the Court lacks subject matter jurisdiction, and the suit must be dismissed. *See id*.

Courts apply *Bennett*'s two-part test to determine which actions are "final" because the APA does not define this term. *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1256 (9th Cir. 2022). To qualify as "final," the action must (1) "mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (citations omitted). "The APA [ ] insulates from immediate judicial review [an] agency's preliminary or procedural steps." *Cent. Delta Water Agency*, 653 F. Supp. 2d at 1091-92 (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997)).

Here, the challenged agency action—the Application submitted to Guam EPA, *see* Compl. ¶¶ 58-63—is not "final" as it does not satisfy *Bennett*'s second prong. Because RCRA and the corresponding regulations explicitly bar Defendants from operating the OB/OD Facility without a permit, *see* 42 U.S.C. § 6925(a); 40 C.F.R. § 270.1(c) (requiring a "permit for the 'treatment,' 'storage' and 'disposal' of any 'hazardous waste'" throughout the life of hazardous waste unit), the Application itself does not allow Defendants to dispose of waste munitions. The Application acknowledges this as the conditions explicitly state that "[a]ny treatment of hazardous waste not authorized in th[e] Permit is prohibited." Application, Permit Conditions ¶ I.A. As such, no legal obligations flow from the Application, which leaves Defendants in the same position they were in before it was submitted. *See Marquette Cnty. Rd. Comm'n v. U.S. EPA*, 726 F. App'x 461, 467 (6th Cir. 2018) (holding that there was no final action "to review" "[i]n the absence of any decision from either agency to ultimately deny or grant the permit"); *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593 (9th Cir. 2008) (holding that *Bennett*'s second prong was not met when plaintiff's "rights and obligations remain unchanged by the" challenged action).

Instead, any legal obligations imposed on Defendants will flow from RCRA and its implementing regulations, should Guam EPA issue a permit. *See id*. at 594 (holding that the second prong of the *Bennett* test was not satisfied when plaintiff's "legal obligations ar[o]se directly and solely from the" statute and not from the agency's actions); *City of San Diego v. Whitman*, 242 F.3d 1097, 1101 (9th Cir. 2001) (holding that an action that does not "impose an obligation, deny a right or fix some legal relationship" is not final).

*Bennett*'s second prong is also not satisfied because the Application is "a preliminary step in the permitting process." *Cent. Delta Water Agency*, 653 F. Supp. 2d at 1093 (citation omitted). In other words, it is "a predicate act" that "has no final consequences" but, instead will "trigger" a final decision by Guam EPA. *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 647 (9th Cir. 2005); *see also Ctr. for Food Safety v. Perdue*, 320 F. Supp. 3d 1101, 1105 (N.D. Cal. 2018) (holding that an agency action is not final when it "is dispositive only of a follow-on substantive decision"). "Administrative agency action that serves only to initiate proceedings does not have the status of law or a direct and immediate effect on the day to day business" of Defendants. *Hecla Mining Co. v. U.S. EPA*, 12 F.3d 164, 166 (9th Cir. 1993). "Until [the RCRA] permit is issued there is no definitive statement on [Guam] EPA's position" about whether AAFB will have the authority to operate the OB/OD Facility. *Id*.

Finally, Plaintiff does not allege that the Application is a final agency action. The Complaint contains no allegations about any rights or obligations that have been determined by the Application or about any legal consequences that flow from its submission. Instead, all of the potential harms Plaintiff alleges may happen as a result of the operation of the OB/OD Facility—such as contamination of the environment, possibility of fires, and harm to wildlife, *see* Compl. ¶¶ 46-52—could only occur, if they do at all, after the permit has been issued.

### B. Plaintiff Lacks Standing

To establish Article III standing, a plaintiff must show: (1) the existence of an injury-in-fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). To demonstrate standing at the pleading stage, "the complaint must allege sufficient facts plausibly establishing each element of the standing inquiry." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (Pro, J., concurring) (citations omitted). Where, as here, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quotations and citation omitted). Even under the "relaxed" causation and redressability "requirements" of NEPA standing, *Whitewater Draw*, 5 F.4th at 1013 (quotation and citation omitted), Plaintiff cannot demonstrate either of these elements.

Plaintiff alleges a wide variety of "cultural, social, spiritual, health, professional, scientific, recreational, aesthetic, [and] economic" interests that will be harmed should Defendants be permitted to operate the OB/OD Facility. Compl. ¶¶ 13, 18. For example, Plaintiff alleges that its "members frequently spend time on Tarague Beach . . . and intend to continue to use and enjoy the beach in the future" but "[t]hey are concerned that [open burn/open detonation] activities on Tarague Beach will contaminate th[is] sacred land." *Id.* ¶ 15. It also claims that its members who are fishers are concerned that operation of the OB/OD Facility "will contaminate the waters where they fish" and that its members who are "wildlife biologists in Guam who conduct research on the island's endangered green sea turtles" "are concerned that impacts from [open burn/open detonation] activities . . . will harm the turtles and thus harm the members' professional and scientific interest." *Id.* ¶¶ 16, 17.

Here, the harms Plaintiff alleges cannot occur as a result of Defendant's submission of the now-pending Application to Guam EPA. Rather, the alleged environmental impacts Plaintiff anticipates will materialize, if at all, only after Guam EPA grants the Application, and may be affected by conditions imposed by the permit upon the operation of the OB/OD Facility. In other words, Plaintiff's injuries are not fairly traceable to Defendants' submission of the Application, which is the only federal action challenged in the Complaint.

Because Plaintiff's injuries are caused by a third party not before this Court, Plaintiff "must 'adduce facts showing that the choices of [Guam EPA] have been or will be made in such manner as to produce causation and permit redressability of injury.'" *Whitewater Draw*, 5 F.4th at 1013 (alteration omitted) (quoting *Lujan*, 504 U.S. at 562). These facts must "show 'that [the absent] third part[y] will likely react in predictable ways.'" *Whitewater Draw*, 5 F.4th at 1018 (quoting *California*, 141 S. Ct. at 2117).

The Complaint contains no allegations about how Guam EPA may react to the Application. Instead, it alleges that "[e]very three years since [1982], the Air Force has applied to renew this permit, and the Guam EPA has approved each of those permit renewals." Compl. ¶ 45. Such "conclusory, generalized statements" are insufficient to sustain Plaintiff's burden of establishing standing. *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013). Without specific allegations about how Guam EPA will likely react to this Application, Plaintiff cannot establish either causation or redressability and, therefore, it lacks standing. *See DSE Grp., LLC v. Richardson*, 381 F. App'x 749, 750 (9th Cir. 2010) (holding that plaintiffs did not satisfy the "fairly traceable requirement" where their injury was "directly caused by Maricopa County, which refuse[d] to issue building permits" but plaintiffs challenged only a final order that informed

whether the County issued the permits and the County was not a defendant); *see also Whitewater Draw*, 5 F.4th at 1018-20; *Bellon*, 732 F.3d at 1142-43.

**C. Plaintiff's Challenge To The Application Is Not Ripe**

"The purpose of the ripeness doctrine is to avoid premature judicial review of administrative action, because an injury is speculative and may never occur." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, No. 5-cv-3094 (CO), 2007 WL 845915, at *4 (D. Or. Mar. 16, 2007) (citation omitted). In a suit challenging agency action, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

Courts consider three factors in determining whether an action is ripe: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). All three factors show that Plaintiff's claim is unripe.

First, there would be no hardship to Plaintiff because its legal rights are not altered. *See id*. (explaining that plaintiffs do not suffer a hardship when the agency actions in question "do not command anyone to do anything or to refrain from doing anything; [ ] do not grant withhold, or modify any formal legal license, power or authority; [ ] do not subject anyone to any civil or criminal liability; [or] create no legal rights or obligations"). Here, Plaintiff's legal rights are not altered because (a) there is no final agency action, *see Klamath Siskiyou*, 2007 WL 845915, at *5, and (b) AAFB cannot operate the OB/OD Facility on the basis of the Application alone, *see Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 112-13 (1948) ("But administrative orders are not reviewable unless and until they impose an obligation, deny a right

or fix some legal relationship as a consummation of the administrative process." (citations omitted)).

Second, judicial intervention would inappropriately interfere with Guam EPA's consideration of the Application. In passing RCRA, Congress set forth a comprehensive system of scientific and technical factors for Guam EPA to consider in determining whether to grant Defendants a permit. *See City of Chicago*, 511 U.S. at 331. Maintaining this suit is improper as it requires the Court to "interfere with th[is] system that Congress specified for the agency to reach [ ] decisions" relating to the disposal of hazardous waste. *Ohio Forestry*, 523 U.S. at 736.

The third "factor supports dismissal where further factual development may provide additional focus, the agency may revise the plan, or review may ultimately become unnecessary." *Cent. Delta Water Agency*, 653 F. Supp. 2d at 1088 (citing *Ohio Forestry*, 523 U.S. at 736). This factor is satisfied because Guam EPA has the right to request additional information from Defendants; it can also modify the Application's proposal for using the OB/OD Facility or deny it altogether, thereby obviating the need for review. *See* 42 U.S.C. § 6925(c); 40 C.F.R. §§ 124.5, 270.29, 270.30(h), 270.41, 270.43; *Cent. Delta Water Agency*, 653 F. Supp. 2d at 1088 (holding that the third factor weighs in favor of dismissal when the agency may conduct further proceedings or "fundamentally alter or abandon the current[ ]" project).

## III. Even If NEPA Does Apply To The Permitting Process, It Does Not Apply To The Application Because It Is Not A Major Federal Action

Agencies must perform a NEPA analysis on all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). According to regulations promulgated by the Council on Environmental Quality, the term "*Major Federal action* . . . means an activity or decision subject to Federal control or responsibility." 40 C.F.R. § 1508.1(q). While Plaintiff asserts that the Application is a major federal action, it provides no

analysis other than parroting the definition of the term in the regulations. Compl. ¶ 60. This is insufficient to establish that NEPA applies. Nor can Plaintiff establish NEPA's applicability as the Application is not a major federal action. First, the Council has excluded from the definition of such actions "[a]ctivities or decisions that do not result in final agency action under the Administrative Procedure Act or other statute that also includes a finality requirement." 40 C.F.R. § 1508.1(q)(1)(iii). Because, as explained above, the Application is not a final agency action, no NEPA analysis was required before the Application was submitted.

Second, the Application is not a major federal action because it does not "constitute an irretrievable commitment of resources." *Conner*, 848 F.2d at 1448. A NEPA analysis is unnecessary when the Government takes an action that does "not constitute an 'irreversible and irretrievable commitment' of resources." *Friends of Se.'s Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir. 1998). "[W]hether an agency action constitutes an 'irreversible and irretrievable commitment of resources' turns on whether," in taking the action, the Government "reserves . . . the absolute right to prevent the use of the resources in question." *Id*. at 1063 (quoting *Conner*, 848 F.2d at 1449) (alteration omitted). In *Conner*, the Bureau of Land Management ("BLM") issued "NSO leases," which contained stipulations "prohibit[ing] lessees from occupying or using the surface of the leased land without further specific approval from the BLM." *Conner*, 848 F.2d at 1444. The plaintiffs sued BLM, seeking to enjoin the leases on the grounds that BLM failed to perform a NEPA analysis when the leases were issued. *See id*. Although the district court found for the plaintiffs, the Ninth Circuit reversed, holding "that the sale of an NSO lease is [not] an irreversible commitment of resources requiring the preparation of an EIS," *id*. at 1447, because the "lease cannot be considered the go/no go point of commitment at which" a NEPA analysis "is required." *Id*. at 1448.

By clear Congressional directive, the Application is also not "the go/no go point of commitment." As the Application recognizes, *see* Application Permit Conditions ¶ I.A, Congress did not give Defendants the authority to commit their resources irreversibly and irretrievably to operating the OB/OD Facility. Congress gave that authority to the EPA and those states/territories with authorized RCRA programs. That authority includes the ability to modify a permit or to deny it. *See* 42 U.S.C. § 6925(c); 40 C.F.R. §§ 124.5, 270.29, 270.41, 270.43. Without the permit, which Plaintiffs do not challenge and has yet to be issued, no final decision has been made. Guam EPA maintains the authority not to grant a permit or to modify it. Thus, the Application is not a major federal action and NEPA is not required. *See Nw. Env't Def. Ctr. v. Rumsfeld*, No. 1-cv-1489 (HO), 2002 WL 1906883, at *2 (D. Or. June 21, 2002) (noting that "no irreversible or irretrievable commitment of resources [were] made" when "final approval . . . ha[d] not been granted" for a project); *see also Friends of Se.'s Future*, 153 F.3d at 1063 (holding that a "Tentative Operating Schedule" "did not constitute an 'irreversible and irretrievable commitment' of resources"); *N. Coast Rivers All. v. U.S. Dep't of the Interior*, 313 F. Supp. 3d 1199, 1211 (E.D. Cal. 2018) (holding that "Interim Contracts" were "not an irreversible and irretrievable commitment of resources" because they "contain[ed] a shortage provision that allows [the agency] to <u>completely withhold water deliveries</u>"); *Wildwest Inst. v. Bull*, 468 F. Supp. 2d 1234, 1244 (D. Mont. 2006) (holding that there was not an irreversible and irretrievable commitment of resources when "[a]t all times before a final decision was made, the [agency] retained complete authority to prevent" the project from moving forward).

## **<u>CONCLUSION</u>**

For the reasons stated above, Defendants' motion to dismiss should be granted.

Respectfully submitted this 8th day of April, 2022.

TODD KIM
Assistant Attorney General

*/s/ Matthew P. Rand*
MATTHEW P. RAND (NY # 4937157)
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
150 M Street NE, Room 3.128
Washington, D.C. 20002
Telephone: (202) 305-0874
Facsimile: (202) 305-0506
matthew.rand@usdoj.gov
*Attorney for Defendants*