1
2
3
4
5
6
7

**THE DISTRICT COURT OF GUAM**

8

| | |
|---|---|
| PRUTEHI LITEKYAN: SAVE RITIDIAN, | CIVIL CASE NO. 22-00001 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| UNITED STATES DEPARTMENT OF THE AIR FORCE; FRANK KENDALL, Secretary of the Air Force; UNITED STATES DEPARTMENT OF DEFENSE; and LLYOD AUSTIN, Secretary of Defense, | |
| Defendants. | |

This matter came before the court for a hearing on September 28, 2022, on Defendants' Motion to Dismiss, ECF No. 19. Mr. David Henkin of EarthJustice argued for the Plaintiff, and Mr. Matthew Rand of the U.S. Department of Justice, Environmental and Natural Resources Division, argued for the Defendants. For the reasons stated herein, the court **GRANTS** Defendants' motion to dismiss.

**A. Relevant Background**

The Plaintiff, *Prutehi Litekyan: Save Ritidian*, is a non-profit corporation based in Guam. Compl. at ¶ 9. The Complaint states that the group's mission is to "protect natural and cultural

1  resources in all sites identified for military live-fire training in Guam for the well-being of the
2  people and future generations of Guam." *Id.*

3        Defendants are the United States Department of the Air Force; Frank Kendall, in his
4  official capacity as Secretary of the Air Force; United States Department of Defense; and Lloyd
5  Austin, in his official capacity as Secretary of the Department of Defense. *Id.* at ¶¶ 19-22.

6        The Complaint alleges that Defendants are in violation of the National Environmental
7  Policy Act, 42 U.S.C. § 4321 *et seq.*, and its implementing regulations—the Council on
8  Environmental Quality ("CEQ") and the Air Force regulations implementing the National
9  Environmental Policy Act; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2),
10  because Defendants failed to prepare an environmental assessment or environmental impact
11  statement. *Id.* at ¶¶ 59-63.

12        Specifically, on May 17, 2021, Andersen Air Force Base (AFB), Guam, submitted to the
13  Guam Environmental Protection Agency ("Guam EPA") an application for a three-year renewal
14  of its Hazardous Waste Management Facility Permit for conducting open burning and open
15  detonation ("OB/OD") of hazardous waste munitions at the Explosive Ordinance Disposal Range
16  ("EOD Range") on Tarague Beach at the Andersen AFB. *Id.* at ¶¶ 2, 40. These hazardous waste
17  "consists of common military ordnance materials (such as black powder, white/red phosphorus,
18  tear gas, ammunitions, propellants, and explosive materials)." *Id.* at ¶ 43.

19        Anderson AFB received its first Hazardous Waste Management Facility Permit for its
20  OB/OD operations at the EOD Range in 1982. *Id.* ¶ 45. The permit is renewed every three years,
21  with Guam EPA having approved previous renewals. *Id.* The May 17, 2021 renewal application
22  remains pending, and Guam EPA has yet to make a decision on whether it will approve or deny
23  said application. Defs.' Mot. at 1, ECF No. 19.

24        Plaintiff alleges that despite potential environmental impacts of OB/OD, Defendants

failed to prepare any National Environmental Policy Act analysis to "(1) take the requisite 'hard look' at the environmental impacts of the proposed OB/OD operations, (2) consider a reasonable range of environmentally preferred alternatives, including the 'no action' alternative, and (3) provide opportunities for public comment on the proposed OB/OD operations and reasonable alternatives," in violation of the National Environmental Policy Act. Compl. at ¶ 2; *see also* ¶¶ 56-57. Plaintiff alleges the National Environmental Policy Act analysis should have been done prior to the submission of the renewal application. *Id.* at ¶¶ 61-63.

Defendants, on the other hand, argue that the National Environmental Policy Act does not apply. Rather, its functional equivalent, the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, applies. Defs.' Mot. at 8, ECF No. 19. In addition, Defendants argue that this court lacks subject matter jurisdiction because the application is not a final agency action and therefore, Defendants have not waived their sovereign immunity. *Id.* at 13-15. Defendants further argue that this court lacks subject matter jurisdiction, because the claim is not ripe. *Id.* at 18-19. Finally, Defendants argue that Plaintiff lacks standing because the harms being alleged are not caused by the application itself but rather, a have-yet-to-be-issued permit. *Id.* at 16-18.

**B. Standards**

**i. Rule 12(b)(1), lack of subject-matter jurisdiction**

Article III of the United States Constitution requires that those who seek to invoke the power of the federal courts must allege an actual case or controversy. *See* U.S. Const. art. III; *see also Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citing *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968). Subsumed within this restriction are two components. *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121-23 (9th Cir. 2009). "Standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). "Both standing and ripeness originate from the

Constitution's Article III requirement that the jurisdiction of federal courts be limited to actual cases and controversies." *Id*. at 1204-05.

"The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication … Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. The related doctrine of ripeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1121-22 (9th Cir. 2010) (citations omitted). "The standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction. The ripeness question is whether the harm asserted has matured sufficiently to warrant judicial intervention. Both questions bear close affinity to one another." *Immigrant Assistance Project of Los Angeles County Federation of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 859 (9th Cir. 2002) (quotation marks, editorial brackets and citations omitted). *See also, City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 n.6 (9th Cir. 2001) (noting that standing "overlaps substantially" with ripeness and that in that case, both were "inextricably linked").

### ii. Rule 12(b)(6), failure to state a claim upon which relief can be granted

Federal Rule of Civil Procedure 12(b)(6) provides that, in response to a claim for relief, a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of motion. Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). The court must engage in a two-step procedure

to determine the plausibility of a claim. *Id*. at 678–79. First, the court must weed out the legal

conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id*. at 678.

Second, the court should presume the remaining factual allegations are true and determine

whether the claim is plausible. *Id*. at 679.

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678

(citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common

sense" to determine the plausibility of a claim given the specific context of each case. *Id*. at 679.

## C. Discussion

### i. Plaintiff lacks standing

The three fundamental elements of constitutional standing are injury in fact, causation,

and redressability:

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it
> has suffered an "injury in fact" that is (a) concrete and particularized and
> (b) actual or imminent, not conjectural or hypothetical; (2)
> the injury is fairly traceable to the challenged action of
> the defendant; and (3) it is likely, as opposed to merely speculative, that
> the injury will be redressed by a favorable decision.

*Hall v. Norton*, 266 F.3d 969, 975 (9th Cir. 2001)

The actions taken by Defendants do not amount to injury to Plaintiff, *i.e.*, the injury is not

fairly traceable to the challenged action of Defendants. While Plaintiff argues that it has suffered

an "injury in fact" through Defendants' continued operation of the facility, the alleged injury

does not come from the submission of the application—the very action that is being challenged

here.

### ii. Plaintiff's claim is not ripe.

1       The question of timing turns on the jurisdictional doctrine of ripeness. "The 'basic

2   rationale' for the ripeness doctrine 'is to prevent the courts, through avoidance of premature

3   adjudication, from entangling themselves in abstract disagreements' over policy with other

4   branches of the federal government." *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir.

5   1990), citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

6       Review is premature if the agency action is not final. *Abbott Labs.*, 387 U.S. at 149. "A

7   claim is not ripe for adjudication if it rests upon contingent future events that may not occur as

8   anticipated, or indeed, may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998)

9   (quotation marks omitted). "Two considerations predominate the ripeness analysis: (1) "the

10  hardship to the parties of withholding court consideration" and (2) "the fitness of the issues for

11  judicial decision." *Abbott Labs.*, 387 U.S. at 149. "To meet the hardship requirement, a party

12  must show that withholding judicial review would result in direct and immediate hardship and

13  would entail more than possible financial loss." *Dietary Supplemental Coalition, Inc. v. Sullivan*,

14  978 F.2d 560, 562 (9th Cir. 1992).

15       In a nutshell, Plaintiff argues that the final agency action is the decision for Defendants to

16  submit the permit renewal application to the Guam EPA. The problem with this argument is that

17  the Guam EPA has not yet acted on the application to renew. As such, the legal rights of any of

18  the parties have not been altered. *See Ohio Forestry Ass'n. v. Sierra Club*, 523 U.S. 726, 733

19  (1998) (explaining that plaintiffs do not suffer a hardship when the agency actions in question

20  "do not command anyone to do anything or to refrain from doing anything; [] do not grant,

21  withhold, or modify any formal legal license, power or authority; [] do not subject anyone to any

22  civil or criminal liability; [or] create no legal rights or obligations.").

23      **iii.  Motion to Dismiss under Rule 12(b)(6)**

24       Assuming *arguendo* that this court has subject-matter jurisdiction, the court finds that

dismissal under Rule 12(b)(6) is appropriate.

### 1. The National Environmental Policy Act and the Resource Conservation and Recovery Act

The National Environmental Policy Act is Congress' broad national commitment to protecting and promoting environmental quality. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989). Its purpose is to force a federal agency to carefully consider the environmental impacts of its proposed actions; and it guarantees that relevant information will be made available to the public and those who play a role in the decision-making process and implementation of that decision. *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 768 (2004).

The Resource Conservation and Recovery Act, on the other hand, is issue specific and is not a broad statute like the National Environmental Policy Act. The Resource Conservation and Recovery Act is a comprehensive environmental statute on hazardous waste that establishes a "cradle to grave" regulatory scheme in order to protect public health and the environment. *Am. Chemistry Council v. EPA*, 337 F.3d 1060, 1065 (D.C. Cir. 2003). It gives the regulatory power to the U.S. EPA, and in turn, U.S. EPA may authorize a State to administer and enforce a hazardous waste program.

### 2. Guam Environmental Protection Agency's ("Guam EPA") Role in the Resource Conservation and Recovery Act

"Any State which seeks to administer and enforce a hazardous waste program" pursuant to RCRA may develop a program and submit an application to the U.S. Environmental Protection Agency ("U.S. EPA") Administrator. 42 U.S.C. § 6926(b). The State applying must meet certain conditions, including proof that the State has in existence a hazardous waste program pursuant to State law and such program is "substantially equivalent" to the Federal program. *Id*. § 6926(c)(1). Upon approval, "[s]uch State [is] authorized to carry out such program in lieu of the Federal program . . . in such State and to enforce permits for . . . disposal

of hazardous waste[.]" *Id*. § 6926(b). "Any action taken by a State under a hazardous waste

program authorized . . . shall have the same force and effect as action taken by the [U.S. EPA]

Administrator[.]" *Id*. § 6926(d).

On August 23, 1985, Guam submitted an application to obtain Final Authorization to

administer the Resource Conservation and Recovery Act program. On December 12, 1985,

Guam was granted the Final Authorization. "This means that the Territory of Guam now has the

responsibility for permitting treatment, storage and disposal facilities within its borders and

carrying out the other aspects of the RCRA program." Final Authorization of Territorial

Hazardous Waste Management Program, 51 FR 1370-02 (Jan. 13, 1986). Any actions taken by

the Territory of Guam through Guam EPA as it relates to the Resource Conservation and

Recovery Act program has the same force and effect as action taken by the U.S. EPA. 42 U.S.C.

§ 6926(d). S*ee also Chem. Weapons Working Grp., Inc. (CWWG) v. U.S. Dep't of the Army*, 111

F.3d 1485, 1492 (10th Cir. 1997) ("[S]tate-issued permits under the Resource Conservation and

Recovery Act have same force and effect as those issued by Environmental Protection

Agency.").

> **3. The Resource Conservation and Recovery Act is a functional equivalent of the National Environmental Policy Act and therefore, the National Environmental Policy Act does not apply in this case.**

Pursuant to the National Environmental Policy Act, all federal agencies, to the "fullest

extent possible," are required to prepare an environmental impact statement on any "major

Federal actions significantly affecting the quality of the human environment[.]" 42 U.S.C. §

4332. The statement must include the following: "(i) the environmental impact of the proposed

action, (ii) any adverse environmental effects which cannot be avoided should the proposal be

implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-

term uses of man's environment and the maintenance and enhancement of long-term

productivity, and (v) any irreversible and irretrievable commitments of resources which would

be involved in the proposed action should it be implemented." *Id.* § 4332(c).

Plaintiff argues that the National Environmental Policy Act is applicable in this case.

Therefore, Defendants should have prepared an environmental impact statement pursuant to 42

U.S.C. § 4332(c). Defendants, however, argue that because they are seeking a permit from Guam

EPA pursuant to the Resource Conservation and Recovery Act, they do not need to comply with

the National Environmental Policy Act because the Resource Conservation and Recovery Act is

a functional equivalent of the National Environmental Policy Act.

There is no Ninth Circuit caselaw on the issue of whether the Resource Conservation and

Recovery Act is a functional equivalent of the National Environmental Policy Act. However, the

Ninth Circuit has previously held that there are exemptions from the procedural requirements

under the National Environmental Policy Act, which Judge John C. Coughenour of the Western

District of Washington discussed in great length. Judge Coughenour put these exemptions into

two overlapping categories: the first focuses on a direct conflict between statutory texts, which is

not applicable in the instant case; and the second focuses on whether the National Environmental

Policy Act procedures will be redundant with those provided for under the statute seeking

exemption.

> In the second category of exemptions, courts have found that NEPA does
> not apply when procedures under another statute "displace" (or make
> "superfluous") the NEPA procedures, or provide the "functional
> equivalent" of the NEPA procedures. Though both types of arguments
> concern a comparison between the procedures provided for in the statute
> in question and those in NEPA, functional equivalence doctrine simply
> looks to the procedures themselves; if they are sufficiently analogous,
> they will be held to be functional equivalents. Displacement analysis, on
> the other hand, attempts to discern whether Congress intended for the
> statutory scheme to replace the NEPA procedures; procedures that
> displace NEPA procedures are not necessarily analogous to NEPA

procedures. *Douglas County,* 48 F.3d at 1504 n. 10 (contrasting the displacement argument, which "asserts that Congress intended to displace one procedure with another" with the functional equivalent argument, which is that "one process requires the same steps as another").

The Ninth Circuit has relied on displacement analysis in holding that certain statutes, including portions of the ESA, are exempt from NEPA. *See id.* at 1503 (ESA's procedures for critical habitat designation make NEPA procedures "superfluous"); *Merrell,* 807 F.2d at 778 (legislative history and differences between the two procedural schemes indicate that Congress intended to displace the NEPA procedures with the carefully crafted compromise procedures in FIFRA).

The Ninth Circuit has also made use of the functional equivalence rationale, though not entirely without reservation. *See Merrell,* 807 F.2d at 781 ("While we hesitate to adopt the 'functional equivalence' rationale, we are confident that Congress did not intend NEPA to apply to FIFRA registrations."); *Anchorage,* 980 F.2d at 1329 ("We are convinced that here ... the duties and obligations imposed on the EPA by Congress under the [Clean Water Act ("CWA") ] will insure that any action taken by the administrator under section 404(b)(1) will have been subjected to the 'functional equivalent' of NEPA requirements.").

. . .

Another thread that runs throughout the NEPA exemption case is consideration of whether NEPA's purposes are in harmony with the purposes of the statute alleged for which a NEPA exemption is being sought. *Courts are more likely to find a NEPA exemption if the arguably exempt statute is designed to protect the environment.*

*Trout Unlimited v. Lohn*, No. CV05-1128-JCC, 2007 WL 1730090, at *14 -*16 (W.D. Wash. June 13, 2007) (emphasis added) (brackets in original).

The Ninth Circuit is in line with other circuits that a National Environmental Policy Act exemption is likely when the exempt statute is designed to protect the environment. For example, in *Municipality of Anchorage v. United States*, the Ninth Circuit recognized that "[a] complete exemption from NEPA requirements would enable EPA to act more expeditiously in fulfilling its purpose of protecting the environment. Thus, as has been recognized, completely exempting EPA from NEPA seems to best serve the objective of protecting the environment which is the

purpose of NEPA." *Anchorage*, 980 F.2d 1320, 1328 (9th Cir. 1992) (internal quotes and brackets omitted). However, the Ninth Circuit was cautious and noted that "it cannot be assumed that EPA will always be the good guy." *Id.* (citations omitted). As such, the Ninth Circuit appears to indicate that a National Environmental Policy Act exemption will be reviewed on a case-by-case basis. *See id.*

The Eleventh Circuit specifically addressed the issue of whether the Resource Conservation and Recovery Act is a functional equivalent of the National Environmental Policy Act. That circuit found that "Congress did not intend for EPA to comply with the National Environmental Policy Act when RCRA applies to the particular EPA activity." *State of Ala. ex rel. Siegelman v. U.S. E.P.A.*, 911 F.2d 499, 505 (11th Cir. 1990). It relied on other circuits' decisions dating back from the 70s that "an agency need not comply with NEPA where the agency is engaged primarily in an examination of environmental questions and where the agency's organic legislation mandates specific procedures for considering the environment that are functional equivalents of the impact statement process." *Id.* at 504 (citations, internal brackets and quotation marks omitted).

The appellate court further explained that specific statutes prevail over general statutes dealing with the same basic subjects. *Id.* In that case as is the case here, the Resource Conservation and Recovery Act is the specific statute created by Congress to address hazardous waste disposal, whereas the National Environmental Policy Act is a general statute applicable to any matters dealing with actions that significantly affects the environment. *See id.*

The appellate court also noted that the Code of Federal Regulation on the Resource Conservation and Recovery Act specifically states that "all RCRA permits . . . are not subject to the environmental impact statement provisions of section 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. 4321." *Id.* at 502 n.6; *see* 40 C.F.R. § 124.9(b)(6).

It appears that the Eleventh Circuit is the only appellate court who has specifically addressed the issue of whether the Resource Conservation and Recovery Act is a functional equivalent of the National Environmental Policy Act. However, other circuits have addressed the National Environmental Policy Act requirements being inapplicable to EPA. *See e.g.*, *Env't Def. Fund, Inc. v. Env't Prot. Agency*, 489 F.2d 1247, 1257 (D.C. Cir. 1973) ("We conclude that where an agency is engaged primarily in an examination of environmental questions, where substantive and procedural standards ensure full and adequate consideration of environmental issues, then formal compliance with NEPA is not necessary, but functional compliance is sufficient."); *State of Wyo. v. Hathaway*, 525 F.2d 66, 69 (10th Cir. 1975), *cert. denied*, 426 U.S. 906 (1976); and *Indiana & Michigan Elec. Co. v. E.P.A.*, 509 F.2d 839, 843 (7th Cir. 1975).

Given the consistent positions of many courts on the National Environmental Policy Act exemptions as to EPA and viewing what is the most pragmatic approach, this court finds the Eleventh Circuit's ruling instructive.  It makes the most sense to apply the Resource Conservation and Recovery Act, because that specifically deals with the environmental issue at hand. Through the Resource Conservation and Recovery Act, a comprehensive process of hazardous waste disposal is complied with, including the issuance of a permit for the disposal itself. This is accomplished through the U.S. EPA, or in this case, through the Guam EPA, who has full authorization from the U.S. EPA. Guam EPA has its own process for issuing a permit, as well as a public comment period. It would be redundant and a waste of resources to require Defendants to comply with the National Environmental Policy Act, while also having already complied with the Resource Conservation and Recovery Act through its permit application.[1] Without the permit, Defendants would not be able to operate its hazardous waste disposable

---

[1] Ultimately, it appears that Plaintiff's real issue is the possible eventual approval of the permit by Guam EPA. *See* Compl. at ¶ 12 ("In October 2021, Prutehi Litekyan submitted a letter to the Guam EPA Administrator, urging the agency to deny Andersen AFB's application for renewal of the hazardous waste permit for OB/OD operations at the EOD Range.").

facility. As such, the additional procedure requirement of the National Environmental Policy Act serves no purpose.

Other than a brief discussion in a footnote, Plaintiff mostly ignores Defendants' argument of a National Environmental Policy Act exemption. *See* Pl.'s Opp'n. at 7 n.1, ECF No. 20. It argues that the Ninth Circuit has been "skeptical of the 'functional equivalent' approach and ha[s] not used this language" in its cases, citing *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 651 n.51 (9th Cir. 2014). That Ninth Circuit panel did not engage in the functional equivalent analysis ("The defendants here do not advance the functional equivalent argument, so we do not address it." *Id.*) and therefore, Plaintiff's reliance of a footnote only attempts to mislead this court.

**D. CONCLUSION**

For the foregoing reasons, the court **GRANTS** Defendants' motion to dismiss. The court finds that it does not have subject-matter jurisdiction and even if it does, the court nonetheless dismisses the case under Rule 12(b)(6).

The Clerk of Court shall enter a judgment in favor of Defendants.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Oct 06, 2022**