ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
MATTHEW P. RAND (NY #4937157)
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
150 M Street NE, Room 3.128
Washington, D.C. 20002
Telephone: (202) 532-5083
Facsimile:  (202) 305-0506
matthew.rand@usdoj.gov
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF GUAM**

|  |  |
|---|---|
| PRUTEHI GUAHAN,<br><br>               Plaintiff,<br><br>    vs.<br><br>UNITED STATES DEPARTMENT OF THE AIR FORCE; TROY E. MEINK, in his official capacity as Secretary of the Air Force; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, in his official capacity as Secretary of Defense,<br><br>               Defendants. | Case No. 22-cv-00001<br><br>Tydingco-Gatewood, C.J.<br>Kennedy, M.J. |

**OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

The relief Plaintiff seeks—reconsideration of the Court's Order staying this case, ECF No. 51—is disfavored.  To succeed, Plaintiff must show that the Court's reasonable exercise of its inherent authority to control its docket after the lapse in Congressional appropriations, was superseded by a new material fact or a change in the law.  *See* CVLR 7(p)(1).  Plaintiff's allegedly new material fact is that Congress was originally expected to appropriate funds to remedy the shutdown quickly, but that it was not until October 17, 2025, when Plaintiff filed its Motion for

1

Reconsideration, ECF No. 52 ("Motion"), that it was evident to Plaintiff that the shutdown would continue for "much longer than initially anticipated." Mot. at 4.

This "fact" is not new. Uncertainty regarding the length of the lapse in appropriations was evident from the moment the shutdown began, and this uncertainty was widely reported in the news both before and at the time that Defendants filed their Motion to Stay Proceedings in Light of Lapse of Appropriations, ECF No. 50 ("Stay Motion"). This "fact" is also not material. Neither the Stay Motion nor the Court's Order granting the Stay Motion were predicated on the shutdown being of limited duration. Thus, Plaintiff cannot sustain its burden, and the Motion should be denied.

While Plaintiff fails to point to a new, material fact warranting reconsidering the Court's stay, there have been several developments after October 7, 2025 that all point toward denying the Motion and maintaining the stay. First, Defendants will agree to pause non-emergency open detonation operations at the open burn/open detonation facility ("Facility") up through and including November 30, 2025.[1] While Defendants do not believe that the harms alleged by Plaintiff are sufficient to warrant lifting the stay, to the extent those harms exist, they should be obviated during this period.

---

[1] As Plaintiff acknowledges, Defendants are not using the Facility for open burns and have not done so for a significant period. *See* Compl. ¶ 42. Emergency detonations, such as detonations of ordinance found off of the military bases, fall outside the scope of the Resource Conservation and Recovery Act and, therefore, are also outside the scope of this lawsuit.

Defendants informed Plaintiff of its commitment to pause non-emergency open detonations on October 22, 2025. Defendants also asked Plaintiff if this commitment changed Plaintiff's position on the stay. Plaintiff acknowledged Defendants' request but has not yet responded to it substantively. Because of the time change between Guam and Washington, D.C., the shortened timeline to file this brief, and the undersigned's pre-existing plans, the undersigned had to file this brief before the end of the day on October 24, 2025 ChT. Regardless, Defendants are committed to pausing non-emergency open detonations until the end of the day on November 30, 2025 should this case remain stayed.

2

Second, on October 20, 2025, the Court issued General Order 25-0020, limiting functions only to "necessary" tasks like "addressing emergency circumstances." This case is not an emergency. Plaintiff did not explain how the operation of the Facility, which has existed for approximately forty years, during the stay will cause new or increased harms to itself or its members.

Third, the U.S. Solicitor General recently decided to file a petition for a writ of certiorari reviewing the Ninth Circuit's decision in this matter. Because this decision was made recently, it was not a ground for the relief sought in the Stay Motion. However, that the Supreme Court may review all or part of the Ninth Circuit's decision counsels against moving forward with this case now.[2]

Even if Plaintiff is correct that there has been a material new fact warranting revisiting the stay, Plaintiff failed to show why the stay should be lifted. To the extent Plaintiff or its members will suffer any harm by the stay, that harm is obviated by Defendants' commitment not to use the Facility except in emergencies. By contrast, Defendants will be harmed by resuming litigation at this time given the lapsed funding impacts both the undersigned counsel and Defendants themselves.

**<u>STANDARD OF REVIEW</u>**

Because "[m]otions for reconsideration are generally disfavored," CVLR 7(p)(1), they "are appropriate only in rare circumstances." *United States v. Guerrero*, No. 5-cv-45, 2006 U.S. Dist. LEXIS 34581, at *1 (D. Guam May 24, 2006). The three rare circumstances are:

> (A) a material difference in fact or law from that represented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or

---

[2] Defendants reserve the right to move to stay the case based on this decision by the Solicitor General after Congress restores funding.

(B) the emergence of new material facts or a change of law occurring after the time of such decision, or

(C) a manifest showing of a failure to consider material facts presented to the Court before such decision.

CVLR 7(p)(1).

## ARGUMENT

Plaintiff has not shown why this case is one of the rare circumstances in which reconsideration is warranted. Rather than point to a material, new fact postdating the Order, Plaintiff points to information that was already widely known at the time of the Order and, in any event, was not relevant to the Order or the Stay Motion. And, even if the Court did reconsider the stay, the Court should not lift it. The balance of harms clearly shows that the Court correctly granted the Stay Motion.

## I.      Reconsideration Of The Stay Is Inappropriate

### A.      Plaintiff Has Not Shown That This Is A Rare Case In Which Reconsideration Is Warranted

Plaintiff asserts that reconsideration is warranted for two reasons: (1) despite its reasonable diligence, Plaintiff did not have an opportunity to oppose the Stay Motion; and (2) there are new material facts warranting reconsideration, namely that "it has become clear that [the shutdown] will drag on for much longer than initially anticipated." Mot. at 3-4. Neither ground warrants granting the Motion.

As for the first, Plaintiff did not act with reasonable diligence in requesting reconsideration. Plaintiff asserts that the ongoing harm it is suffering from Defendants' use of the Facility necessitate lifting the stay. *See* Stay Mot. at 5-6. On October 1, 2025, Defendants filed the two-page Stay Motion. The Court granted the Motion on October 7, 2025. Ten days later, Plaintiff

4

filed its Motion and accompanying declaration from counsel. Plaintiff did not include any declarations by its members explaining the supposed harm imposed by the stay. Plaintiff also does not explain why it took ten days to file its eight-page brief supporting the Motion.[3] Thus, while Plaintiff may have acted reasonably in not opposing the Stay Motion before the Court ruled on it, it did not act with reasonable diligence in delaying filing the instant Motion, especially given the interests Plaintiff claims are at stake.

As for the second, Plaintiff points to one article to show that the shutdown was initially expected to last a week and another to show that the shutdown is now expected to last a longer period of time. *See* Mot. at 4. But, Plaintiff's cherry-picked citations are deceptive. There were many news articles from the start of the shutdown discussing that the shutdown's duration was uncertain.[4] Information that was known to the parties at the time the Stay Order was issued does not constitute a "new material fact." *See Hopkins v. Callahan*, No. 23-cv-2347, 2025 U.S. Dist. LEXIS 174966, at *5 (C.D. Cal. Sept. 5, 2025) (denying a motion for reconsideration where the moving party "knew or reasonably should have known" the facts the moving party asserted was new).

---

[3] While the brief is eight pages long, one of the pages is the case caption and another is mostly the signature block and the one sentence conclusion.

[4] *See, e.g.*, Bergeon & Campbell, P.C., *Government Shutdown Update*, National Law Review, Sept. 25, 2025 (noting that there "appears" to be no negotiations for a new appropriation and, as a result, "it is not clear how long a shutdown might last or what kind of options . . . might be fashioned to allow the government to reopen"); Natalie Andrews & Lindsay Ellis, *Federal Shutdown Begins As Talks Fall Apart*, Wall Street J., Oct. 1, 2025, at A1 (quoting a letter from OMB to various federal agencies noting that "the duration of a shutdown [is] difficult to predict" (quotation omitted)); Samuel O'Brient, *Here's What Shutdowns Have Done to the Stock Market Throughout History*, Business Insider, Oct. 1, 2025 (quoting an investment professional stating that, "the uncertainty of this shutdown is length" (quotation omitted)); Anthony Zurcher, *Four Ways the US Government Shutdown Could End*, BBC, Oct. 1, 2025 (noting that the shutdown "may take days; it may take weeks" and "play[ing] out" different scenarios for how it could end).

Plaintiff also implies that the Stay Motion was predicated on the lapse being of limited duration. This is inaccurate. Defendants never represented how long the shutdown would last, nor could they have done so. Congress, not Defendants, controls the appropriations process, and Congress never provided an estimate for the shutdown's duration. Indeed, the Stay Motion clearly states that Defendants did "not know when funding [would] be restored by Congress." Stay Mot. ¶ 1. As such, even if Plaintiff's "fact" is correct and the expected duration of the lapse in appropriations has increased from when the Court granted the Stay Motion, this "fact" is not material. Because Defendants never represented how long the lapse in appropriations would last, the lapse's duration could not have factored into the Court's decision to grant the Stay Motion. *See DiSalle v. Lensi*, No. 22-cv-2152, 2024 U.S. Dist. LEXIS 155665, at *3 (C.D. Cal. July 29, 2024) (explaining that a fact is material for the purposes of a motion for reconsideration if the fact "might affect the outcome of the [motion] under the governing law" (quotation and citation omitted)).

**B.      The Only New Facts Show Why The Court Should Deny The Motion**

While Plaintiff has not identified any new material facts warranting the Court revisiting the stay, there are three actually new post-October 7 developments that reinforce the correctness of the Court's decision to stay the case. First, and most importantly, the Air Force will agree to pause non-emergency open detonations at the Facility up through and including November 30, 2025. Thus, to the extent Plaintiff is harmed by the continuing use of the Facility, those harms are now mooted.

Second, on October 20, 2025, the Court issued General Order 25-0020. Pursuant to the General Order, the Court "reduce[d] its operations [to] perform only excepted activities, which include activities necessary to the exercise of the judiciary's constitutional functions; activities

6

addressing emergency circumstances, such that the suspension of the function would threaten the safety of human life or the protection of property; and activities authorized by law."

This suit is not an "emergency circumstance." Open burn/detonation operations on Tarague Beach are not new. They have been occurring for approximately four decades. While Plaintiff alleges in the Motion that these operations harm it and its members, these allegations do not rise to the level of an "emergency." Plaintiff does not, for example, allege that the operations have increased in cadence or intensity. Nor does Plaintiff claim that the operations have caused additional or new harms that did not previously exist. Plaintiff also does not contend that open burn/open detonation operations have injured its members.[5] Thus, Plaintiff provides no reason that this case should move forward even though "the federal judiciary no longer has funding to sustain full, paid operations." General Order 25-0020.[6]

Third, within the past week, the United States Solicitor General decided to seek a writ of certiorari asking the Supreme Court to review the Ninth Circuit's decision in this matter. The matters ruled on by the Ninth Circuit include foundational constitutional principles that go to whether this Court has the power to hear Plaintiff's lawsuit. In other words, the petition will likely present questions that are dispositive to the present suit. Denying the Motion and maintaining the stay is thus efficient and preserves judicial resources generally and specifically at this time of limited funding due to the lapse in appropriations. *See CFPB v. MoneyGram Int'l, Inc.*, No. 22-

---

[5] The Motion does not include any sworn statements by Plaintiff or its members to establish the harms allegedly suffered by Defendants' actions. Nor did Plaintiff's counsel include any representations made by his client or its members in his declaration. *See* ECF No. 52-2. Instead, Plaintiff merely cites to the Ninth Circuit's recitation of the facts alleged in this case to establish the harms it has allegedly suffered. *See* Mot. at 5 (citing *Prutehi Litekyan*, 128 F.4th at 1104-05).

[6] Moreover, Plaintiff never moved to preliminarily enjoin Defendants from operating the Facility, which also undercuts Plaintiff's late-arising argument that the Facility poses a grave risk to the safety of its members.

cv-3256, 2022 U.S. Dist. LEXIS 223995, at *5-6 (S.D.N.Y. Dec. 9, 2022) (granting motion to stay because the pending cert petition "and the potential Supreme Court decision it seeks to engender directly bear on issues in this case").[7]

## II.        This Case Should Remain Stayed

Finally, even if the Court decides to reconsider its Order, Plaintiff presents no reason why that reconsideration should lead to a different result.

Because granting a stay is within the discretion of the district court, there is not a strict test for determining when a stay is appropriate. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005).[8] "Among th[e] competing interests" a court should consider in evaluating a request for a stay are: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. at 1110. These factors point to staying the case.

---

[7] Upon learning of the Solicitor General's decision, the undersigned asked Plaintiff if it would reconsider its position on the stay. Plaintiff declined.

[8] Plaintiff relies on *Lockyer* to establish the standard for a stay in the Ninth Circuit. In *Lockyer*, the Ninth Circuit considered whether the district court properly granted a "*Landis* stay." 398 F.3d at 1100. In *Landis*, the Supreme Court considered when a district court should exercise its inherent authority to control its docket to stay a case in favor of proceedings in another district court that present identical issues. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Here, Defendants asked the Court to stay this case because of a lapse in Congressional appropriations, not because Defendants sought to litigate the issues presented in another district. Therefore, the standard set forth in *Landis* and discussed in *Lockyer* is inapplicable to the instant dispute. The third *Lockyer* factor shows why. Asking whether a stay would "simplify[ ] or complicat[e ] issues, proof, and questions of law" makes sense in the context of two competing lawsuits presenting identical issues. It does not make sense in the context of a stay because of lapse in funding. Indeed, Plaintiff does not even attempt to analyze this factor in the Motion. *See* Mot. at 4. Nonetheless, even applying the *Lockyer* standard, a stay is still warranted.

First, there is no reasonably possible harm to Plaintiff from the stay because the Air Force has agreed to pause non-emergency uses of the Facility up through and including November 30, 2025.

Second, should the Court not continue the stay, the hardships imposed on Defendants and the Court will equal or outweigh the hardship imposed on Plaintiff. Plaintiff claims that "there is no hardship or inequity" in asking counsel to work without compensation. Mot. at 6. The Court need not decide whether asking counsel to work without pay is reasonable because it is not a complete statement of the potential hardship. Should the stay be lifted, civilian employees at the relevant client agencies may be recalled to work without compensation.[9] The Court's funding has also lapsed and, therefore, it must reduce its case load only to emergencies. While other district courts may not have found these types of harms sufficient to stay other lawsuits, these potential harms are sufficient here as there are no harms to Plaintiff from maintaining the stay.[10]

---

[9] Prior to filing this brief, the undersigned attempted to determine how many of Defendants' employees relevant to this suit are furloughed. Because of the shortened timeframe to respond to the Motion and the fact that the undersigned's two main points of contact are furloughed, the undersigned could not determine exactly how many employees are furloughed, how many are currently excepted from furlough, and the timeline on which the furloughed employees can be recalled. Accordingly, should the Court grant the Motion and lift the stay, Defendants respectfully request that the parties confer and propose a new schedule for compiling and serving the draft administrative record that accounts for these timing issues.

[10] That the Solicitor General has now decided to seek certiorari in this matter further shows why the stay should be maintained. If the Court lifted the stay, there may be additional hardships imposed on the parties and the Court. For example, the Court and the parties may expend significant resources litigating this case only for the Supreme Court to rule that this Court lacks jurisdiction or that Plaintiff failed to state a claim. As for the third consideration, maintaining the stay may also result in the simplification of the legal issues, as there is a possibility that, should the Supreme Court grant the petition for a writ of certiorari, it will clarify what constitutes the final agency action and whether this Court has jurisdiction over some or all of Plaintiff's claims.

9

**CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court deny the Motion and not reconsider its Order staying this case.  In the alternative, Defendants respectfully request that the Court hold that continuing the stay is warranted.

Respectfully submitted this 23rd of October, 2025.[11]

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ Matthew P. Rand*

Matthew P. Rand
Trial Attorney
Environment & Natural Resources Division
Natural Resources Section
150 M Street NE, Room 3.128
Washington, D.C. 20002
Telephone: (202) 532-5083
Facsimile: (202) 305-0506
matthew.rand@usdoj.gov

*Counsel for Defendants*

---

[11] This Motion was filed on October 23, 2025 in Washington, D.C.